# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SECURITIES AND EXCHANGE COMMISSION,**

        Plaintiff,

v.                                                     Case No: 6:18-cv-1606-Orl-31GJK

**RONALD C. MONTANO, TRAVIS STEPHENSON, ANTONIO GIACCA, & MICHAEL WRIGHT,**

        Defendants.

**ROMEO A. MONTANO, ELMA C. MONTANO, REM FLORIDA PROPERTIES, LLC, and DENISE MONTANO.**

        Relief Defendants.

---

## REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **DEFENDANT RONALD MONTANO'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW (Doc. No. 111)** |
| **FILED:** | **November 21, 2019** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

# PROCEDURAL HISTORY

On March 11, 2019, Plaintiff Securities and Exchange Commission (the "SEC") filed an Amended Complaint against Defendants Ronald C. Montano ("Montano"), Travis Stephenson, Antonio Giacca, and Michael Wright, alleging numerous violations of the Securities Act of 1933 and the Exchange Act of 1934.[1] Doc. No. 54. The SEC also asserts claims against Romeo A. Montano, Elma C. Montano, REM Florida Properties, LLC, and Denise Montano as Relief Defendants. *Id.* The SEC alleges the following claims against Montano:

*First Claim for Relief:* Fraud in the Offer or Sale of Securities, Violations of Section 17(a) of the Securities Act;

*Second Claim for Relief:* Fraud in Connection with the Purchase or Sale of Securities, Violations of Section 10(b) of the Exchange Act and Rule 10b-5;

*Third Claim for Relief:* Unregistered Offer or Sale of Securities, Violations of Section 5 of the Securities Act;

*Fourth Claim for Relief:* Fraud in Connection with the Purchase or Sale of Securities By or Through Means of Others, Violations of Section 20(b) of the Exchange Act;

*Fifth Claim for Relief:* Fraud in the Offer or Sale of Securities, Aiding and Abetting Violations of Section 17(a) of the Securities Act; and

*Sixth Claim for Relief:* Fraud in Connection with the Purchase or Sale of Securities, Aiding and Abetting Violations of Section 10(b) of the Exchange Act and Rule 10b-5. *Id.* at 39-44.

---

[1] On March 5, 2019, consent judgments were entered against Giacca and Stephenson on the original complaint. Doc. Nos. 48, 49, 50. On August 15, 2019, a consent judgment was entered against Wright. Doc. Nos. 84, 85.

On April 1, 2019, Montano filed an answer and affirmative defenses. Doc. No. 64. Montano asserts ten numbered affirmative defenses, though some are overlapping or redundant, *id.* at 15-18:

*First:* that the Complaint fails to state a claim upon which relief can be granted because not all binary options are securities, and "there needs to be a security." *Id.* at 15.

*Second:* lack of subject matter jurisdiction because the claims involved relate to brokers who do not reside in the United States, and the SEC lacks jurisdiction to regulate them. *Id.* Montano also alleges that "binary options are not necessarily securities, and thus the SEC lacks subject matter jurisdiction." *Id.*

*Third:* that the SEC does not have statutory authority to regulate the actions alleged in the Complaint because "binary options are not necessarily securities," and the harm "was caused by international actors . . . ." *Id.* at 16.

*Fourth:* that the harm was caused by third party brokers that Montano had no contact with and could not control. *Id.*

*Fifth:* repeating this allegation and adding that the harm was caused by consumers' reliance on the third-party brokers' statements. *Id.*

*Sixth:* again, stating consumers relied on third party brokers' statements, and therefore Montano's statements were not material. *Id.* at 17.

*Seventh:* that the SEC fails to allege specific statements consumers relied on that were fraudulent or false. *Id.*

*Eighth:* that the SEC's claims are barred by "res judicata due to the judgment in the case of *Federal Trade Commission v. Montano, et al.*, 6:17-cv-2203-Orl-28KRS, District Court for the

Middle District of Florida." *Id.* Montano asserts that the damages in that case overlap with the damages alleged here. *Id.*

*Ninth:* that Montano "acted in good faith as defined in 15 U.S.C. §§ 77o(a), 78t(a), and other applicable law . . . ." *Id.*

*Tenth:* that the statute of limitations bars the causes of action, as they are based "on alleged wrongdoing that took place more than five years before the original Complaint was filed . . . ." *Id.* at 18.

On November 21, 2019, Montano filed a motion for summary judgment (the "Montano Motion"). Doc. No. 111. On December 23, 2019, the SEC filed its response to the Montano Motion. Doc. No. 113. On January 6, 2020, Montano filed his reply to the response. Doc. No. 117. On April 23, 2020, the Montano Motion was referred to the undersigned.

## FACTS

Montano worked in affiliate marketing in binary options. Doc. No. 111-2 at 4. He was promoting "[b]inary options in general and how to make money in binary options." Doc. No. 100 at 17. Montano was regularly making over six figures "as part of the binary options niche[.]" Doc. No. 100 at 2; Doc. No. 111-2 at 2.

Affiliate marketing in binary options is advertising designed to funnel customers to brokers to open an account. Doc. No. 99-3 at ¶ 11. The campaigns advertised a trading system that could be accessed for free if the customer opened and funded a binary options account with a broker. *Id.* Affiliate marketing in binary options involved the creation of bulk dissemination of solicitation materials. *Id.* at ¶ 12. Each email contained a link for the customer to click on that would direct them to a campaign website. *Id.* at ¶ 12. Montano sent out emails with links to the landing pages. Doc. No. 111-2 at 6. Montano would create a video that appeared on the website touting a trading

system that would trade in binary options for the customer. Doc. No. 111-2 at 6; Doc. No. 99-6 at ¶ 38. When Montano sent follow-up emails, he sent them in the name of the fictional characters in the videos. Doc. No. 100 at 32. Montano would use the video as the landing page. Doc. No. 111-2 at 6. The landing page would send the visitors that were interested to BOA or Boost through their funnels, such as an opt-in box. *Id.* The minimum amount to fund an account was $250. Doc. No. 99-3 at ¶ 13. Montano would also recruit sub-affiliates to promote the offers and provide them with targeted emails to use. Doc. No. 99-3 at ¶ 20.

Montano knew that the stories portrayed in the videos were fictional and that the testimonials were portrayed by actors. Doc. No. 111-2 at 8. Montano did not know of "any real traders who actually used the services that [he] was promoting as an affiliate advertiser in connection with binary options[.]" *Id.* He also was not "aware of any trading results in connection with services, products that [he] was promoting as an affiliate advertiser in connection with binary options[.]" *Id.* Montano knew that the videos he paid others to create "were based on trading results and profits and losses that were not related to real people's trading results from a product [he was] promoting[.]" *Id.* at 9, 10. Montano states that he was promoting the brand from BOA and Boost that customers were going to get when they signed up. Doc. No. 100 at 17.

Montano was paid when customers opened and funded trading accounts, which were referred to as "first time deposits" ("FTD"). Doc. No. 111-2 at 11. Montano assumed that once customers funded the accounts, they would begin trading. *Id.* at 15. An FTD triggers a "CPA," which is a "cost per action," and is the amount of money the affiliates and advertisers would get paid when an FTD occurred. *Id.*; Doc. No. 100 at 20-21. Once an FTD was made, BOA would submit a certain amount of the FTD, for example, $275, to ClickSure. Doc. No. 100 at 18. ClickSure would then disseminate those funds to the affiliate marketers and affiliate advertisers,

5

based on what the affiliate publisher told ClickSure the split among them should be. *Id.* at 19. When Montano was in the affiliate advertiser role, ClickSure would pay his portion for that role into his ClickSure account. *Id.* If Montano sent emails to potential customers that resulted in FTDs, he would get an affiliate commission plus the advertiser portion. *Id.* at 30. Sub-affiliates also earned commissions on FTDs. Doc. No. 99-3 at ¶ 36.

Montano worked on campaigns named Binary Cash Code, Auto Mobile Code, Trianasoft, Centument, and Centument 2.0. Doc. No. 111-1 at ¶ 9. No representations were made "regarding specific binary options or any asset that could be represented in a binary option." *Id.* at ¶ 15.

Larry's Cash Machine was a binary project that was launched under Montano's name. Doc. No. 100 at 23, 35. Montano testified that this was the first binary project that he was affiliated with and he did not create the script or video and did not contribute money to it. Doc. No. 111-2 at 14. He testified that he briefly reviewed the video before it was attached to the landing page. Doc. No. 100 at 78. The video for Larry's Cash Machine featured a purported Harvard professor that invented software that generated $38 million in profits in the prior thirty-six months. Doc. No. 99-3 at ¶ 19. It touted software that automatically traded and generated approximately 98% profits and guaranteed turning investors into millionaires within a year. *Id.* at ¶ 19. For Larry's Cash Machine, Montano received an affiliate commission, plus the advertiser portion. Doc. No. 100 at 30. The Larry's Cash Machine "campaign resulted in approximately 3,000 customers opening and funding a binary options trading account." Doc. No. 99-3 at ¶ 25.

From October 2013 through December 2016, Montano's and his company's bank accounts received approximately $6.5 million in deposits related to their binary options activities. Doc. No. 99-6 at ¶ 15. Montano testified that he deleted his computer files relating to binary options in 2016. Doc. No. 100 at 4-9.

6

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Liberty Lobby, Inc.,* 477 U.S. at 257; *see* Fed. R. Civ. P. 56(c). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). In resolving a summary judgment motion, the Court must view the record evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

## THE MONTANO MOTION

Montano's motion seeks a judgment of dismissal, arguing principally that the laws and regulations are unconstitutionally vague (under the Fifth Amendment) as applied to his activities and that his conduct is shielded from regulation under the First Amendment. He also asserts various other legal grounds to avoid liability: that he did not offer or sell securities; absence of scienter; the SEC has failed to proffer required expert testimony; the rule of lenity excuses his conduct; and the SEC lacks jurisdiction. Finally, Montano raises various other matters in an apparent effort to obtain what he calls a partial summary judgment.

Montano, despite his refusals to answer material questions and provide other discovery in this civil litigation, seeks dismissal of all claims against him. In so doing, Montano essentially

ignores the adverse inferences that may be drawn by the finder of fact with respect to his conduct. Montano's vagueness and free speech arguments are virtually frivolous, particularly in a summary judgment context, and his additional technical positions are unavailing.

Montano, despite assertion of a number of fanciful and non-responsive arguments, consistently ignores the potential findings and conclusions that are available to be drawn from the evidence of record and particularly the permissible (though not compelled) inferences that arise from his litigation strategy with respect to the Fifth Amendment and document production.

## LEGAL ANALYSIS

### A. SEC JURISDICTION

Montano argues that the SEC lacks jurisdiction in this case because it is pursuing the same relief for the same transactions as the Commodity Futures Trading Commission in the companion case *CFTC v. Montano, et al.*, No. 6:16-cv-1607-31GJK. Doc. No. 111 at 20-21. Montano argues that no binary options connected to securities have been identified. *Id.* Montano provides no authority to support these arguments. *Id.*

Montano relies on Wright's declaration stating that Montano's marketing campaigns did not "contain any representations about trading binary options relating to securities or other assets." Doc. No. 117 at 2. Montano provides no authority for the argument that the campaign must include representations about the binary options relating to securities for the SEC to have jurisdiction. Additionally, the SEC points to evidence that the broker aggregators to which Montano referred investors, Boost and BOA Elite, referred investors to brokers that offered binary options tied to stocks and stock indices, citing Doc. No. 102 (list of BOA Elite Brokers) and Doc. No. 103 (list of Boost Brokers). Doc. No. 113 at 10. An example of this evidence is that BOA advertises Banc de Swiss as one of its brands and "an online binary options site . . . [that] offer[s] their clients an

8

easy and intuitive way to trade on leading financial markets including Forex, Commodities, Indices, and Stocks." Doc. No. 102 at 1-2. Montano therefore fails to demonstrate that there is no genuine issue of material fact regarding whether binary options connected to securities have been identified. **It is recommended that the Court reject this argument.**

### B. FIFTH AMENDMENT DUE PROCESS: VAGUENESS

Montano argues that the laws and regulations being enforced by the SEC are unconstitutionally vague as applied to him and that he did not have fair notice that his conduct was proscribed. Doc. No. 111 at 4-8. Ironically, his assertions are themselves vague with no real identification of matters as to which he could not understand the rules governing his conduct. Montano also disregards evidence of his structuring his activities to obscure their nature and his destruction of documents, both of which suggest his keen awareness of the bounds of legal conduct.

Statutes and regulations must comport with due process by giving a person of ordinary intelligence a reasonable opportunity to know what is prohibited. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982); *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1310-11 (11th Cir. 2009). A law is not impermissibly vague "if a reasonable person . . . would have known that [his] conduct was at risk." *United States v. Pitt-Des Moines, Inc.*, 168 F.3d 976, 987 (7th Cir. 1999).

Montano provides no case law to suggest that the requirements being enforced here by the SEC are improperly vague. Further, he makes no real argument that application of those requirements to him somehow impermissibly left him in doubt as to whether his activities were subject to regulation and enforcement actions. **His Fifth Amendment arguments should be summarily dismissed.**

### C.    FIRST AMENDMENT: FREE SPEECH

Montano argues that the laws the CFTC is suing under violate his rights under the First Amendment. Doc. No. 111 at 8-10. He contends that the speech he is being punished for making is protected commercial-related speech. Doc. No. 111 at 8.

The SEC's claims against Montano are rooted in its theory that the materials Montano created were fraudulent. There is evidence that the stories portrayed in the videos were fictional and that the testimonials were portrayed by actors. Doc. No. 111-2 at 8. Montano knew that the videos he paid others to create "were based on trading results and profits and losses that were not related to real people's trading results from a product [he was] promoting[.]" *Id.* at 9.

Montano's First Amendment argument is unavailing to the point of near frivolity. "[T]he First Amendment does not shield fraud." *Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003). **The First Amendment arguments are meritless and should be rejected.**

### D.   LACK OF EXPERT TESTIMONY

Montano argues that he is entitled to summary judgment because the SEC has not submitted expert testimony on a myriad of issues. Doc. No. 111 at 18-19; Doc. No. 117 at 3. The crux of Montano's argument is that because there is no proof that binary options are securities, expert testimony is necessary. Doc. No. 111 at 19; Doc. No. 117 at 3.

In *S.E.C. v. Banc de Binary Ltd.*, 964 F. Supp. 2d 1229, 1237 (D. Nev. 2013), the court held that binary options are securities under the statute because 15 U.S.C. § 78c(a)(10) defines a "security" as "'any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein *or based on the value thereof* ) . . . .'" 964 F. Supp. 2d at 1237 (quoting 15 U.S.C. § 78c(a)(10)) (emphasis in *Banc de Binary*). Binary

options "give the purchaser a contractual right to the payment of money based upon the value of securities." *Id.* Thus, they are privileges based on the value of securities and fall under the statutory definition of a security. *Id.*

The other issues that Montano argues require expert testimony revolve around whether the emails and videos were fraudulent or attempted to deceive. Doc. No. 111 at 19. Montano admitted that the videos depicted fictitious characters and false results. Doc. No. 111-2 at 8-9. A reasonable inference could therefore be drawn, without the aid of expert testimony, that the emails and videos were fraudulent or attempted to deceive.

**Thus, Montano fails to demonstrate that he is entitled to judgment as a matter of law on these issues due to a lack of expert testimony.**

### E.  RULE OF LENITY

Montano argues that "the rule of lenity should easily trump any deference the SEC would claim for its interpretations of these questionable statutory applications." Doc. No. 111 at 20. Assuming without deciding that the rule of lenity applies in this civil case, it only applies where "'there is a grievous ambiguity or uncertainty.'" *United States v. Cingari*, 952 F.3d 1301, 1311 (11th Cir. 2020) (quoting *Holloway v. United States*, 526 U.S. 1, 12 n.14 (1999) (punctuation and citation omitted)). In making his rule of lenity argument, Montano fails to identify any grievous ambiguity or uncertainty in the applicable statutes. Doc. No. 111 at 19-20. He does not specify the statutes that contain ambiguities or how they should be interpreted in his favor. *Id.* The Court will not make Montano's arguments for him.[2] **Thus, it is recommended that the Court reject this argument.**

---

[2] *See Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008) ("judges are not like pigs, hunting for truffles buried in briefs" (quoting *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003)).

### F. RELIANCE

Montano argues that the SEC must show that consumers relied on the videos he created and that such reliance is attributable to their losses. Doc. No. 111 at 22. Montano relies on *Stoneridge Investment Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 159 (2008), but fails to recognize that the case held that reliance "is an essential element of the § 10(b) *private* cause of action." (Emphasis added.) "'Justifiable reliance' . . . is not an element of an SEC enforcement action because Congress designated the SEC as the primary enforcer of the securities laws, and a private plaintiff's 'reliance' does not bear on the determination of whether the securities laws were violated, only whether that private plaintiff may recover damages." *S.E.C. v. Morgan Keegan & Co.*, 678 F.3d 1233, 1244 (11th Cir. 2012). **As this is an SEC enforcement action, it is recommended that the Court reject Montano's reliance argument.**

### G. LARRY'S CASH MACHINE CAMPAIGN

Montano argues that he is entitled to summary judgment on claims related to the Larry's Cash Machine campaign because it was not his campaign and he was not responsible for it. Doc. No. 111 at 22-23. Montano cites to his testimony before the investigative panel that the Larry's Cash Machine campaign was a binary project that used his name, but he was not involved in the production of the video and did not contribute any money towards the video or the script. *Id.* at 23; Doc. No. 111-2 at 13-14. Within that same testimony, however, Montano states that he briefly reviewed the video before it was attached to the landing page. Doc. No. 115-6 at 11. Montano's testimony alone creates genuine issues of material fact as to whether his involvement in the Larry's Cash Machine campaign was sufficient to make him responsible for its misdeeds. **Montano's Motion should be denied as to Larry's Cash Machine.**

### H. EVIDENCE OF SECURITIES

Montano argues that there is no evidence that he "engaged in the offer or sale of any securities or security-based swaps." Doc. No. 111 at 10, 13-14, 15, 16, 17. Montano also argues that there is no evidence that securities were traded. *Id.* at 10-11, 13, 15, 16, 17.

Montano relies on *Banc de Binary Ltd.*, 964 F. Supp. 2d 1229 (D. Nev. 2013), for the proposition that the binary options must be based upon the value of securities to be subject to SEC jurisdiction, Doc. No. 111 at 10-11, which, as discussed above, held that binary options are securities under the statute.

There is evidence that he engaged in the offer or sale of binary options. Montano himself testified before the investigative panel that he would send emails out with links to websites that contained videos "talking about binary options and . . . making money in binary options." Doc. No. 111-2 at 6-7. Montano made money when FTDs from people that he solicited were used to create accounts touted as making money from binary options. *Id.* at 11. Thus, there is a genuine issue of material fact regarding whether Montano engaged in the offer of securities. **Montano's Motion should therefore be denied as to the arguments made regarding evidence of securities.**

### I.  SCIENTER

Montano argues that there is no evidence of scienter. Doc. No. 111 at 11-14, 15, 16, 17. "[S]cienter is an issue ordinarily left to a trier of fact." *S.E.C. v. Monterosso*, 756 F.3d 1326, 1335 (11th Cir. 2014). Knowing misconduct or severe recklessness, which is "an extreme departure of the standards of ordinary care, which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it[,]" can establish scienter. *Id.*

13

Montano admitted that the videos depicted fictitious characters and false results. Doc. No. 111-2 at 8-9. A reasonable inference from Montano's knowledge of the false characterizations is that he knew the characterizations presented a danger of misleading clients as to the profitability of the options trading software. **Montano's Motion should therefore be denied as to the arguments made regarding evidence of scienter.**

### J. "IN CONNECTION WITH" LANGUAGE

Regarding the Second Claim for Relief, Montano argues that his behavior does not satisfy the "in connection with the purchase or sale of any security" language of the statue. Doc. No. 111 at 14. Montano provides no support for his argument that he was only engaging in "marketing activities" and that the phrase "in connection with" should be directed solely to fraudulent practices usually associated with the sale or purchase of securities rather than at "marketing activities." *Id.* Montano also does not explain how "marketing activities" are not associated with the sale or purchase of securities. *Id.* **Montano's Motion should be denied as to this argument.**

### K. PERSONAL KNOWLEDGE OF TRANSACTION

In support of a request for partial summary judgment, Montano argues that the SEC must be able to show personal knowledge of a transaction or of a commodity attached to the transaction. Doc. No. 111 at 22. As discussed above, binary options are securities under the Securities Exchange Act. *Banc de Binary Ltd.*, 964 F. Supp. 2d at 1237. Montano provides no authority for his argument that the SEC must be able to show personal knowledge of a transaction. Montano fails to demonstrate that he is entitled to judgment as a matter of law regarding these arguments. **Thus, his alternative request for some sort of partial summary judgment should be denied.**

### L. TERRITORIALITY

Montano argues that "[t]he SEC lacks the jurisdiction to punish or enforce its regulations for alleged binary options trades outside the U.S." Doc. No. 111 at 21. He argues that he is entitled to "partial summary judgment on the alleged trades and transactions that took place outside of the United States." *Id.* at 21-22. Montano contends that the SEC failed to show that any liability, title transfer, or trades occurred in the United States or was linked to a United States commodity. *Id.* at 22.

Under 15 U.S.C. § 77v(c)(1) (2010), the United States district courts

> have jurisdiction of an action or proceeding brought or instituted by the Commission or the United States alleging a violation of section 77q(a) of this title involving-- . . . conduct within the United States that constitutes significant steps in furtherance of the violation, even if the securities transaction occurs outside the United States and involves only foreign investors . . . .

In *S.E.C. v. Scoville*, 913 F.3d 1204, 1215 (10th Cir.), *cert. denied*, 140 S. Ct. 483, 205 L. Ed. 2d 268 (2019), the court relied on 15 U.S.C. § 77v(c)(1) (2010), and stated, "[I]t is clear that Congress 'affirmatively and unmistakably' directed that those provisions apply extraterritorially in an enforcement action." Although Montano argues that *Scoville* "is not long for this world," Doc. No. 117 at 2, the United States Supreme Court declined to exercise certiorari jurisdiction to review it. 140 S. Ct. 483, 205 L. Ed. 2d 268 (2019).

Here, there is evidence that Montano violated the Act by creating and disseminating emails and webpages claiming false performance results. Montano does not argue that he was not in the United States when he created and disseminated the emails and webpages, which a jury could find constitutes significant steps in furtherance of violating 15 U.S.C. § 77q(a).[3] *Scoville*, 913 F.3d at

---

[3] 15 U.S.C. § 77q (2011) states:

> It shall be unlawful for any person in the offer or sale of any securities (including

15

1219 (defendant committed significant steps in furtherance of violating the Securities Exchange Act when he created and promoted the investments over the internet while residing in Utah and the servers housing the website were physically located in the United States). Thus, Montano fails to demonstrate that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law regarding transactions that took place outside of the United States. **Montano's argument regarding territoriality should be denied.**

### M. REMEDIES

Montano argues that the SEC lacks expert testimony regarding tracing funds for disgorgement purposes and justifying restitution. Doc. No. 111 at 23. He also contends that the SEC lacks direct evidence "of trades or persons who lost based on trades, to justify these remedies." *Id.* The SEC argues that it need only produce a reasonable approximation of Montano's ill-gotten gains and that "disgorgement is not measured by losses incurred by investors, but by the unjust enrichment received by the defendant." Doc. No. 113 at 19-20. Recently refined considerations as to equitable remedies available in enforcement proceedings preclude final adjudication on a summary record of whatever relief may ultimately be appropriate against Montano. *See Liu v. SEC,* 591 U.S. ___ , 140 S. Ct. 1936 (2020). **Montano's request for summary judgment on remedies should be denied.**

---

security-based swaps) or any security-based swap agreement (as defined in section 78c(a)(78) of this title) by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly--
(1) to employ any device, scheme, or artifice to defraud, or
(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

## CONCLUSION

Montano fails to demonstrate that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Accordingly, it is **RECOMMENDED** that Montano's Motion be **DENIED**.

## NOTICE TO PARTIES

**A party's failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its filing waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.**

Recommended in Orlando, Florida, on July 24, 2020.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:

Presiding District Judge
Counsel of Record