# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SECURITIES AND EXCHANGE COMMISSION,**

        **Plaintiff,**

v.                                    Case No:   6:18-cv-1606-GAP-GJK

**RONALD C. MONTANO, TRAVIS STEPHENSON, ANTONIO GIACCA, and MICHAEL WRIGHT,**

        **Defendants,**

**ROMEO MONTANO, ELMA C. MONTANO, DENISE MONTANO, and REM FLORIDA PROPERTIES, LLC,**

        **Relief Defendants.**

## ORDER

This matter comes before the Court on the Motion for Partial Summary Judgment (Doc. 99) filed by Securities and Exchange Commission (the "**SEC**"); and the Motion for Summary Judgment (Doc. 111) filed by Ronald Montano ("**Montano**"). On referral, Magistrate Judge David A. Baker issued separate Reports and Recommendations recommending the denial of both motions. (Docs. 124, 125). Montano and the SEC filed Objections to the Reports pertaining to their respective motions (Docs. 126, 127), and each filed a Response (Docs. 128, 129). Upon *de novo* review of the above, the Reports will be adopted.

**I.   BACKGROUND**

In this case, the SEC claims the defendants engaged in a massive fraud involving the offer

and sale of binary options to prospective investors through false, misleading and otherwise deceptive marketing material promoted on the Internet and disseminated via spam email.[1]

On March 11, 2019, the SEC sued the defendants alleging violations of the Securities Act of 1933 ("**Securities Act**") and the Exchange Act of 1934 ("**Exchange Act**"). (Doc. 54). The SEC asserts the following claims against Montano:

(1) fraud in the offer or sale of securities in violation of Section 17(a) of the Securities Act;

(2) fraud in connection with the purchase or sale of securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5;

(3) fraud in connection with the purchase or sale of securities in violation of Section 5 of the Securities Act;

(4) fraud in connection with the purchase or sale of securities by or through means of others in violation of Section 20(b) of the Exchange Act;

(5) fraud in the offer or sale of securities, aiding and abetting in violation of Section 17(a) of the Securities Act; and

(6) fraud in connection with the purchase or sale of securities, aiding and abetting in violation of Section 10(b) of the Exchange Act and Rule 10b-5.

(*Id.* ¶¶ 131–151).

On November 21, 2019, the SEC filed a motion for partial summary judgment on liability, (Doc. 99), and Montano filed a competing motion for summary judgment, (Doc. 111). The Court

---

[1] The Court adopts and incorporates by reference the "Facts" section of the Reports and Recommendations. (Doc. 124, pp. 4–6; Doc. 125, pp. 4–7).

referred both motions to United States Magistrate Judge David A. Baker. Upon review, and after briefing by the parties (*see* Docs. 113, 114, 115, 117), Judge Baker recommends the denial of both motions, (*see* Docs. 124, 125).

As discussed in greater detail below, Montano and the SEC object to Judge Baker's recommendation to deny their respective motions. (Docs. 126, 127). With briefing complete (Docs. 128, 129), this matter is ripe for adjudication.

## II.  LEGAL STANDARDS

### A.  Review of Reports and Recommendations

In resolving objections to the recommendation of a magistrate judge, the district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to.[2] Fed. R. Civ. P. 72(b)(3). *De novo* review requires independent consideration of factual issues based on the record. *Jeffrey S. by Ernest S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 513 (11th Cir. 1990). After conducting a careful and complete review of the findings and recommendations, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

### B.  Motions for Summary Judgment

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party bears the burden of showing that no genuine

---

[2] Where a litigant does not make specific objections to a magistrate judge's factual findings, those findings are reviewed for clear error. *Garvey v. Vaughn*, 993 F.2d 776, 779 n.9 (11th Cir. 1993).

issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied its burden, the Court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id*. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

**III.  ANALYSIS**

    **A.  Montano's Objection**

Montano raises six objections to the Report on his motion for summary judgment. The Court addresses each objection in turn.

        **1.  SEC Jurisdiction**

For his first objection, Montano argues that Judge Baker incorrectly found that the SEC has

jurisdiction over this matter because there is no summary judgment evidence that: (1) his marketing activities had any connection to securities-based binary options; (2) the trading software permitted securities-based binary options; (3) consumers traded securities-based binary options; or (4) consumers lost money.

Montano's arguments fail for two reasons. First, there is evidence showing that he marketed securities-based binary options. For example, the evidence reveals that Montano launched a binary options campaign called Larry's Cash Machine and disseminated solicitation material (either directly or indirectly) that promised investors trading software that could do all of the investor's trades in the stock market with 97% accuracy. (Doc. 113-2 at 128:2-16; Doc. 99-3, ¶¶ 15–27 (Travis Stephenson detailing his marketing relationship with Montano for Larry's Cash Machine); Doc. 101 at 112–115 (email from Montano to the sub-affiliates for Larry's Cash Machine)). The evidence reveals that Montano also launched other marketing campaigns to funnel prospective investors to broker intermediaries, Boost and BOA Elite, who then referred those investors to brokers who offered binary options tied to stock. (Doc. 100 at 98:5–107:22, 148:22-25, 238:3-239:4; Doc. 102; Doc. 102-1).

Second, the SEC isn't required to prove that the marketed trading software worked as promised or that any securities transactions actually occurred. (*See generally* Docs. 111, 117, 126). This is because the securities "fraud provisions are not defeated by the fact that a security purportedly traded is nonexistent or fictitious." *S.E.C. v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1200 (11th Cir. 1999) (quoting *First Nat. Bank* of *Las Vegas, N. M. v. Russell's Estate*, 657 F.2d 668, 673 n.16 (5th Cir. 1981). In fact, "[i]t would be a considerable paradox if the worse the securities fraud, the less applicable the securities laws."[3] *Unique Fin. Concepts*, 196 F.3d 1195 at

---

[3] Furthermore, as the SEC notes, Section 17(a) does not require proof of any securities

1200 (quoting *SEC v. Lauer*, 52 F.3d 667, 670 (7th Cir. 1995).

Accordingly, Montano has failed to demonstrate that the SEC lacks jurisdiction over this matter.

### 2. Fifth Amendment

As his second objection, Montano claims that Judge Baker erred in rejecting his vagueness challenge under the due process clause of the Fifth Amendment. (Doc. 126, pp. 5–6). "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). However, the due process clause does not demand "perfect clarity and precise guidance." *Ward v. Rock Against Racism*, 491 U.S. 781, 794, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). Rather, a statute is only unconstitutionally vague "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000) (citation omitted).

There are two types of challenges under the void-for-vagueness doctrine—a facial challenge and an as-applied challenge. A facial challenge "seeks to invalidate a statute or regulation itself."[4]

---

transaction because, by its express terms, Section 17(a) reaches "the offer" of securities. *See* 15 U.S.C. 77q(a). Section 10(b)'s "in connection with the purchase or sale" requirement is broadly interpreted so that, "[i]n some instances a § 10(b) fraud may occur even without an actual purchase or sale of securities," such as where material misrepresentations "were disseminated to the public in a medium upon which a reasonable investor would rely." *SEC v. Merkin*, No. 11-23585-CIV, 2012 WL 5245561, *4, *8 (S.D. Fla. Oct. 3, 2012) (citation omitted); 17 C.F.R. 240.10b-5. Section 5(c) of the Securities Act does not require proof of any securities transaction because, by its express terms, Section 5(c) makes it unlawful for any person, directly or indirectly, "to offer" unregistered securities. *See* 15 U.S.C. § 77e(c). And Section 5(a) of the Securities Act, which makes it unlawful for any person, directly or indirectly, "to sell" an unregistered security, is broadly interpreted to reach the solicitation of a sale. *See* 15 U.S.C. § 77e(a); *Pinter v. Dahl*, 486 U.S. 622 (U.S. 1988).

[4] A party can only make a facial challenge to a statute if "no standard of conduct is specified

*Indigo Room, Inc. v. City of Fort Myers*, 710 F.3d 1294, 1302 (11th Cir. 2013) (citation omitted). By contrast, an as-applied challenge "addresses whether a statute is unconstitutional on the facts of a particular case or to a particular party." *Harris v. Mexican Specialty Foods, Inc*., 564 F.3d 1301, 1308 (11th Cir. 2009).!

Here, Montano argues that the laws underlying the SEC's claims are unconstitutionally vague "as applied to him." (Doc. 111, pp. 4–8, 13, 15, 16, 17, 18). But he submits no case law to support his bald assertions. Nor does he make any convincing argument that the laws impermissibly left him with doubt as to whether his activities were prohibited or that the laws invite arbitrary enforcement. (*See generally*, Docs. 111, 126). Indeed, Montano makes no attempt to even analyze the underlying laws to demonstrate how they are vague as applied to his conduct.

Instead, Montano essentially attacks the SEC's ability to prove its case. He argues that the SEC has failed to establish that he "offered any securities or swap agreements," "was offering their sale," or made "representations for purchase or sale of any security." (Doc. 111, pp. 5–6, 113; Doc. 126, p. 5). Montano also argues that he personally did not know, or, due to his lack of education was incapable of knowing that his conduct was proscribed. (Doc. 111, p. 5; Doc. 126, p. 5).

Montano's personal knowledge and mental capacity is irrelevant to a vagueness challenge, which is based upon a reasonable person standard. *U.S. v. Lebowitz*, 676 F.3d 1000, 1012–13 (11th Cir. 2012). Moreover, Montano's remaining arguments regarding the SEC's ability to prove its case do not amount to a constitutional challenge. Even if they did, there is evidence showing that he made false and misleading representations in connection with the offer or sale of securities. (*See* Doc. 100

---

at all," *Parker v. Levy*, 417 U.S. 733, 755–757, 94 S.Ct. 2547, 2561–62, 41 L.Ed.2d 439 (1974), and if the statute "is impermissibly vague in all its applications," *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494–495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982).

at 621:13-623:2; *see also* Doc. 99-3, ¶17; Doc. 99-2, ¶ 9). The Supreme Court has long held that the securities laws apply to individuals who engage in these types of activities.[5] Accordingly, Montano has failed to establish that the laws underlying the SEC's claims are unconstitutionally vague as applied to him.

### 3. Expert Witness

Next, Montano contends that Judge Baker erred by rejecting his argument that he is entitled to summary judgment because the SEC failed to produce expert testimony showing that "the binary options relate[d] to securities" and "whether the trading software in fact traded binary options." (Doc. 126, pp. 6–7). However, to prove its claims, the SEC isn't required to proffer expert testimony showing that the binary options related to securities. There is sufficient lay testimony and documentary evidence to suggest that Montano marketed securities-based binary options to prospective customers by funneling them the landing page of a broker aggregator who then referred the investor to a binary options broker tied to stock. (Doc. 100 at 98:5–107:22, 148:22-25, 238:3-239:4; Doc. 99-3, ¶¶ 16, 24–26; Doc. 102; Doc. 102-1).

Furthermore, no expert testimony is necessary to show that the software did not work as promised because Montano's misrepresentations were not limited to claims about the software. The SEC proffers evidence showing that Montano engaged in false and deceptive activities by, *inter*

---

[5] *See Pinter v. Dahl*, 486 U.S. 622, 646–47 (U.S. 1988) (interpreting 15 U.S.C. §77l(a)(1)) (defendant who solicited others to buy unregistered stock was liable for violating Section 5 of the Securities Act); *S.E.C. v. Corp. Relations Grp., Inc*., No. 6:99-cv-1222-ORL-28KRS, 2003 WL 25570113, at *9 (defendants who deceptively promoted third-party's securities in publications were liable under Sections 10(b) and 17(a)); *SEC v. Esposito*, No. 8:08-cv-494-T-26EAJ, 2011 WL 13186000, at *5 (M.D. Fla. June 24, 2011) (party who disseminated deceptive marketing material about securities was liable under anti-fraud provisions of the securities laws); *SEC v. Levin*, 2013 WL 594736, *10 (S.D. Fla. Feb. 14, 2013) (defendant who marketed unregistered securities on behalf of his employer was liable under Section 5); *SEC v. Tuchinsky*, No. 89-6488-CIV-1-1 RYSKAMP, 1992 WL 226302, *3-4 (S.D. Fla. Jun. 29, 1992) (same).

*alia*, convincing prospective investors that they would receive access to free trading software if they submitted their contact information. In reality, however, the investors were simply funneled to the landing page of a broker aggregator. (Doc. 100 at 98:5–107:22, 148:22-25, 238:3-239:4; Doc. 102; Doc. 102-1). Furthermore, Montano acknowledges that the marketing materials he made (or had produced) for his marketing campaigns depicted fictional products, results, and investors. (*Id.* at 621:13-623:2). Thus, Montano's third objection is unavailing.

### 4. Securities-Based Transactions

For his fourth objection, Montano posits that Judge Baker didn't address his argument that "the SEC has failed to produce any evidence of binary options relating to securities that are tied to Montano." (Doc. 126, p. 7). But Judge Baker addressed this argument and found that it lacked merit. (*See* Doc. 124, pp. 8–9).

### 5. Territoriality

Next, Montano contends that Judge Baker erred by dismissing his argument that he is entitled to summary judgment regarding any alleged transaction that didn't occur within the United States because none of the laws underlying the SEC's claims apply extraterritorially. (Doc. 126, pp. 7–8; Doc. 111, pp. 21–22). As support, Montano relies on *Morrison v. Nat'l Australian Bank Ltd.*, 561 U.S. 247 (2010), in which the U.S. Supreme Court held that "[w]hen a statute gives no clear indication of an extraterritorial application, it has none."

However, shortly after *Morrison* was decided, Congress amended the Securities Act and the Exchange Act to grant district courts jurisdiction over actions brought by the SEC for violations of 15 U.S.C. § 77v(c) involving: "(1) conduct within the United States that constitutes significant steps in furtherance of the violation, even if the securities transaction occurs outside the United States and involves only foreign investors; or (2) conduct occurring outside the United States that has a

foreseeable substantial effect within the United States." 15 U.S.C. § 77v(c); *SEC v. Scoville*, 913 F.3d 1204, 1215 (10th Cir. 2019) (describing history of the post-*Morrison* amendments).

Here, there is evidence to suggest that Montano took significant steps in furtherance of the charged violations by soliciting investors to purchase unregistered binary options tied to securities while doing business for MEL in the United States. (Doc. 100 at 564:18-565:6, 98:5–107:22, 148:22-25, 238:3-239:4; Doc. 99-3, ¶¶ 16, 24–26; Doc. 102; Doc. 102-1). Accordingly, Montano's objection lacks merit.

### 6. Restitution and Disgorgement

Finally, Montano argues that Judge Baker should have granted summary judgment in his favor on the issue of remedies because the SEC has failed to show that any of his gains were ill-gotten or that he has been unjustly enriched.

The SEC is entitled to disgorgement upon producing a reasonable approximation of the defendants' ill-gotten gains. Exactitude is not a requirement; so long as the measure of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty. *Sec. & Exch. Comm'n v. Hall*, 759 F. App'x 877, 882 (11th Cir.), *cert. denied sub nom. Hall v. Sec. & Exch. Comm'n*, 140 S. Ct. 140, 205 L. Ed. 2d 35 (2019) (citation and internal quotations omitted). The burden then shifts to the defendants to show that the number is not reasonable. *Id*.

Here, the SEC has submitted evidence showing that Montano's campaigns induced at least 5,000 new investors to open accounts and that he received $250 to $400 in commissions for each new account.[6] Thus, he would have received at least one million dollars in commissions. Montano

---

[6] (Doc. 99-3, ¶¶ 26, 29, 28, 31 (3,800 to 4,250 investor accounts); Doc. 99-5, ¶¶ 9, 17 (1,000 investor accounts); (Doc. 99-4, ¶14 (533 investor accounts)).

does not challenge any of that evidence. Therefore, sufficient evidence exists to support the SEC's request for disgorgement.

Montano's objections are overruled, and the Court finds no clear error in the remaining portions of Judge Baker's Report and Recommendation (Doc. 124). So the Court will deny Montano's motion (Doc. 111).

### B. The SEC's Objection

The SEC's Objection, when boiled down to its essence, is that Judge Baker should have recommended the granting of its motion because the SEC submitted uncontroverted evidence of Montano's liability and is, therefore, entitled to summary judgment to that extent. (Doc. 127). The Court disagrees.

While the SEC has cited to evidence that tends to show that Montano made misrepresentations and fraudulent omissions in connection with the offer or sale of securities-based binary options, it is unclear which campaigns resulted in a violation of each of the six claims asserted against Montano. And the SEC offers the Court no guidance on the issue. Instead, it invites the Court to simply enter a "general judgment" finding that "Montano committed one or more securities fraud violations." (Doc. 127, p. 16 n.12). In other words, the SEC asks the Court to sift through hundreds of papers to determine which, if any, campaigns establish Montano's liability under the six claims brought against him. According to the SEC, this is the most economical and efficient course of action because a jury trial will be avoided and remedies can be assessed through a bench trial or briefing.[7] (Doc. 127, p. 16).

---

[7] The SEC apparently wants the Court to grant summary judgment on a "per campaign" basis so that it can "determine whether it is worthwhile to continue with claims based on any campaigns for which summary judgment was not granted." (Doc. 127, p. 16 n.12). But the SEC can make that determination without the impractical judgment it seeks by simply evaluating the strength of its evidence and the amount of effort it is willing to put into proving its case. Besides, even if it

The Court declines to sieve through the voluminous record in an effort to piece together the undisputed facts necessary to grant liability judgment on each the SEC's claims. This is a complex case involving numerous campaigns for which Montano played varying roles. The methods, objectives, and revenue sharing details of these campaigns, as detailed in the hundreds of pages of the record submitted by the SEC, while having some elements in common, differ substantially. Moreover, factual issues related to the SEC's request for an injunction and the calculations for civil penalties and disgorgement are inextricably intertwined with factual issues related to Montano's liability.[8] In light of the overlapping factual issues, and the complexity of this case, the Court agrees with Judge Baker that a summary finding of liability predicated upon one or more campaigns would be of no practical value. (Doc. 125, p. 8).

When, as here, a proposed partial summary judgment does not advance the ultimate resolution of a case, the motion may be denied on that basis, even if it is otherwise well supported. *Powell v. Radkins*, 506 F.2d 763, 765 (5th Cir. 1975) (explaining that a court may in its discretion deny summary judgment as to portions of a case in order to achieve "a more orderly or expeditious handling of the entire litigation") (citing 6 J. Moore, Federal Practice P56.15(6), at 2427); *Toyoshima Corp. of California v. Gen. Footwear, Inc.*, 88 F.R.D. 559, 560 (S.D.N.Y. 1980) ("partial summary judgment is properly withheld where, on the basis of the cold record, a considerable expenditure of judicial time and effort will be required to sift out and piece together the undisputed facts essential to a summary judgment") (citation omitted).

---

was prudent and economical to grant summary judgment on a per campaign basis—it isn't—the SEC fails to detail which of Montano's campaigns violated the laws underlying its six claims. Throughout its motion, the SEC largely refers to the campaigns as a whole.

[8] The Court notes that if this matter goes to trial, the jury will likely resolve many of the overlapping factual disputes regarding the issue of liability and remedies.

Therefore, the Court will overrule the SEC's objection to Judge Baker's Report and Recommendation (Doc. 125) and deny its motion (Doc. 99).

## IV. CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** as follows:

1. The Reports and Recommendations (Docs. 124 and 125) are **ADOPTED** and **CONFIRMED**, as set forth above.

2. Montano's and the SEC's Objections (Docs. 126 and 127) to the Reports and Recommendations on their respective motions are **OVERRULED**.

3. The SEC's Motion for Partial Summary Judgment (Doc. 99) is **DENIED.**

4. Montano's Motion for Summary Judgment (Doc. 111) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on October 5, 2020.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE